Opinion by
Cunningham, P. J.
Defendant in error brought her action in the District Court on a contract of insurance entered into between her husband and plaintiff in error, in which contract plaintiff was named as beneficiary. On March 26th, 1913, plaintiff’s husband, the assured, died from the effects of a dose of arsenic, which he took on that day. Plaintiff contends that the arsenic was taken by mistake, while defendant insists that the evidence shows it was taken with suicidal intent. In the view we take of another feature of the case, presently to be alluded to, it will not be necessary for us to determine assured’s motive in taking the poison which destroyed his *425 life, or convenience we shall assume that the arsenic was taken by mistake, and shall refer to the transaction as an accident. The plaintiff recovered judgment, and the case is here for review on writ of error.
The defendant is a fraternal organization, without capital stock, and is maintained solely for the benefit of its members and their beneficiaries. In his application for membership, which was filled out by himself, assured stipulated and agreed to accept his certificate of membership subject to all the conditions, provisions and limitations of the constitution, laws, rules and regulations of the Order as they then existed or might thereafter be amended. He also stated, in his application, that he had acquainted himself with the constitution and rules of the Order. Indeed, the certificate of membership, which is little more than a brief card introducing Boaz to the other members of the Order, does not specify the rights or obligations of either party to the contract. On this point the membership certificate states that William Boaz (plaintiff’s husband) “is entitled to all the rights • and privileges of membership accruing to him under the constitution.” Among other things, the Constitution of the Order, in forcé at the date of assured’s death, contained the following provisions:
“In event of any accidental injury on account of which a liability may arise against the Order, notice of the accident (not the results) must be sent in writing to the Supreme Secretary within ten days after the accident, stating the full name and address of the injured member, the nature date, extent and full particulars of his accident and injury, and the name and address of his medical attendant.
“In event of a death resulting from external, violent and accidental means, as hereinbefore provided, notice of the accident must be given as hereinbefore provided, and, in addition, notice of the death must be given in writing to the Supreme Secretary within ten days after the death. * * * Failure to give, any notice, together with full par *426 ticulars, as hereinbefore required, shall be deemed a waiver of all claims against the Order, and shall invalidate the same. * * *. The forwarding of blanks by the Supreme Secretary, as above provided, or the investigation of any claim by a member of the Order, or anyone authorized to represént the Order, or the holding of an autopsy by any one representing the Order, shall not constitute or be a waiver of any right or of any defense which the Order may have against any claim made against it, but all labor, inconvenience and expense which a claimant, under the provisions of Section 5 of this Article, may, in any case, incur in making proof of any claim, shall be at such claimant’s risk.”
It will be observed from,the foregoing provisions of the constitution that plaintiff was required to give the Order notice of any accident upon which she might seek to predicate liability, within ten days from the date thereof. (It will be further noted that two notices were required by the constitution, but since the death occurred on the same day that the accident happened, and since neither party has, in his brief, made any point of the provision requiring two notices, we shall not do so.) The contract further expressly provides that failure to give notice within the time stipulated “shall be deemed a waiver of all claims against the Order and shall invalidate the same.” As we proceed, the importance of this forfeiture provision will become apparent.
On April 3rd — eight days after the accident and eight days after the death of her husband — plaintiff’s attorney prepared a written notice of the accident and death, which he addressed to “Mr. Chas. C. Daniel, Supreme Secretary, Order of United Commercial Travelers of America, Chicago, Illinois.” This notice was enclosed in an envelope which was addressed in precisely the same way. The envelope containing said notice appears, from the postmarks thereon, to have been mailed at Denver on April *427 3rd, and to have reached Chicago on April 4th. The headquarters of the Order were not. in Chicago, but in Columbus, Ohio, and the office of the Supreme Secretary was in the latter city. No evidence was offered tending to show that the Order maintained an office in Chicago. After several days’ delay in Chicago, the letter was finally forwarded to Columbus (by whom does not appear), and reached that city on Saturday, April 12th, judging from the postmark on the envelope. But the letter was not delivered to the Supreme Secretary or to the Order until Monday, April 14th — nineteen days after the date of the accident, and’ nine days after the expiration of the time for the serving of the notice under the provisions of the contract.
1. Was the giving of notice within the prescribed time a condition precedent to plaintiff’s right to recover? This is the first question in the case, and this question has been repeatedly answered in the affirmative by our Supreme Court. In Jennings vs. Brotherhood, 44 Colo., at page 74, 98 Pac., 984, 18 L. A. A. (N. S.) 109, 130 Ann. St., 109, it is said:
“The purpose of the provision of the policy invoked by the defendant and above quoted [the provision referred to requiring a notice of accident to be given within ten days, etc.] was to enable it to verify the statements made by the insured, in order to protect itself from fraud, cmd the notice thereby required is a condition precedent to a right of recovery under the policy.” (Italics here and elsewhere, unless otherwise stated, are our own.)
In Barclay vs. London Co., 46 Colo., 558, 105 Pac., 865, this rule is again announced in the most sweeping terms possible. In the iatter case, at page 564 [105 Pac. 867], it is said:
“The plaintiffs voluntarily entered into the contract, with these conditions therein, and thereby made themselves subject to such conditions. Their stipulation in regard to *428 immediate notice was a condition with which they must comply in order to bring the defendant under its obligations. Their right to indemnity flowed from this instrument. It was an executory contract, and failure to comply with the conditions as to notice was a failure to complete the contract."
It does not appear from a statement of the facts in the Barclay case that the policy there under consideration stipulated forfeiture as a penalty for failure to give the notice within the time specified, as does the policy in the case we are now considering, and Mr. Justice White, who. wrote the opinion in the Barclay case, quotes the following from Kentzler vs. Association, 88 Wis., 589, 60 N. W., 1002, 43 Am. St., 934:
‘True, there is no forfeiture clause in the contract. Nevertheless the plaintiff, in order to maintain this action, was bound to perform such condition precedent.”
Whether the opinion in Barclay vs. London Co., supra, was meant to modify the announcement in Preferred Acc. Ins. Co. vs. Fielding, 35 Colo., 119, 83 Pac., 1013, 9 Ann. Cas., 916, we need not determine. In the latter case, which has been'cited by plaintiff, it was ruled that a notice given ninety days after the accident, where the policy required “immediate notice,” did not bar the beneficiary’s right to recover upon a policy which did not, in express terms, or by necessary implication, provide for forfeiture for default with respect to the giving of notice.
It is important to keep in mind the distinction between the policy under consideration in Preferred Acc. Ins. Co. vs. Fielding, supra, and the policy, or contract, we are here considering. In the former case the specific time for giving the notice was not fixed or stipulated, but “immediate notice” was there provided for. The courts have pretty uniformly ruled- that the phrases, “immediate notice,” “prompt notice,” and other provisions of similar import, do not mean instant notice, but it is held that such phrases *429 must be construed to mean that the notice shall be given in a reasonable time, and what is a reasonable time depends upon all the circumstances in the case, and ordinarily becomes a question of fact for the jury. It will be observed that there is a further important distinction between the provisions of the policy in the Fielding case and the provisions of the contract in the case we are now considering. In the Fielding case, as we have pointed out, forfeiture for' default in the giving of the notice was not stipulated, while forfeiture is stipulated in the present case. In the Barclay case it is further said (page 562, 105 Pac., 866) :
“No court should, or can, properly, take from the parties the inherent right to contract as they will, and make a contract for them as they might have made, have made, in the light of subsequent events.” (The italics appear in the Barclay opinion.)
Again, at page 564, in the Barclay case (105 Pac., 866), Justice White uses this language:
“The plain and unequivocal requirements of the contract are that ‘upon the occurrence of an accident, and also upon receipt of notice of any claim o.n account of an accident, the assured shall give immediate notice in writing of such accident or claim with the fullest informaiton available,’ to the defendant. These conditions are as much a part of the contract as any other portion thereof.”
The foregoing announcements by our Supreme Court would be binding upon us even if they were contrary to the weight of authority elsewhere. But they appear to be in entire accord with the vast preponderance of authority in this and other countries. See cases collated in note to Hatch v. U. S. Casualty Co., 14 Ann. Cas., 293. To hold that the giving of notice within the time the parties to a contract of insurance have voluntarily agreed upon (when said parties have further stipulated that all claims under the policy shall be deemed waived for failure to give the notice within such time) is not a condition precedent, is *430 to hold that it is not a condition at all. A judicial construction of the contract here under consideration having this effect would be in the very teeth of the opinion in Barclay vs. London Co., supra, and the authorities there cited and relied upon.
What plaintiff’s rights would have been had she proved that from physicial or mental infirmity existing from the date of the accident to the expiration of the time for the giving of the notice, or even existing immediately before and at the expiration of the time for the giving of the notice; or had she shown that she had no knowledge of her husband’s connection with the Order, or her right to indemnity by reason thereof, in time to comply with the conditions requiring notice; or had her contract provided for “immediate notice,” or “prompt notice”; or had it contained no provision for forfeiture for failure to give notice within the time provided; or had plaintiff mailed the notice in an envelope properly addressed, in ample time, and had the same not been delivered to the Supreme Secretary by reason of some unforeseen catastrophe or mishap, over which the plaintiff had no control, we are not called upon to determine, since no such state of facts is shown by the record to exist in this case.
2. It is true, as plaintiff contends, that under certain circumstances one claiming under a contract of insurance, the provisions of which are in all respects similar to those in the contract we are now considering, may recover, notwithstanding the notice has not been given within the stipulated period. There is a line of authorities holding that one charged with the duty of giving notice of an accident, or of death, may plead and prove, as an excuse for his failure in that behalf, that it was, through no fault of his own, impossible for him to comply with the provision touching the giving of notice. This rule appears to have been adopted and followed by our former Court of Appeals in U. S. Casualty Co. v. Hanson, 20 C. A., 393, and in *431 Jennings vs. Brotherhood, supra; but there was neither plea nor proof in the instant case to bring plaintiff within this rule. For failure to comply with the provision of the contract requiring the service of notice , was due to the misdirection of the envelope containing the notice. Furthermore, there is no sufficient reason disclosed by the evidence for her failure to mail- the notice several days earlier than it was actually mailed. No evidence whatever was offered to explain the apparent carelessness in addressing the envelope containing the notice to Chicago instead of Columbus. There is an intimation in her brief that she had no knowledge or means of knowledge as to the proper address of the Supreme Secretary, to whom the notice was, under the contract, to be sent, and to whom', in fact, she attempted to send it, but a statement in her brief, it goes without saying, cannot supply or take the place of apt averments, and proper proof necessary to sustain the same. Moreover, as we read the record, it cannot be questioned that plaintiff knew or knew- how to ascertain by the slightest effort) the address of the Supreme Secretary of the Order. Her husband’s membership certificate showed plianly that the Order had a local secretary (or there was a- local lodge of the Order which had a secretary) in the City of Denver, where the accident occurred, and where, ever sinc.e the issuance of the certificate in 1906 — more than seven years —plaintiff and her husband had resided. A letter dated April 11th, written to the Order on plaintiff’s behalf, states that counsel for plaintiff, or plaintiff herself, or both of them (the plural pronoun being used) had ever since the death of the assured been in conference with the local secretary referred to. It is also clear that plaintiff knew of her husband’s connection with the Order, for she testified that she sometimes paid his dues and received the receipts therefor. These receipts, which she offered in evidence, show that they were issued in Denver, by the scretary of the local lodge, with whom, the letter of April 11th states, *432 plaintiff o.r her counsel had been in conference “ever since his death” — meaning the death of plaintiff’s husband. This local secretary had, at the time of Boaz’ death, and for a long time prior thereto, maintained an office in one of the largest and best known office buildings in Denver. There is additional evidence, not necessary to be recited here, which conclusively established plaintiff’s knowledge, or ready means of knowledge, as to the address of the Supreme Secretary. It is not contended she had any information pointing to Chicago as the city to which the notice should be sent.
■Counsel for plaintiff says in the brief:
“It is not claimed that either Mrs. Boaz or her attorney had ever seen the constitution or by-laws or had anything whatever to guide them other than the said certificate and cards” — meaning by “cards,” receipts for dues paid by plaintiff herself in part.
Granting, but not so deciding, that ignorance of the provisions of the constitution would, if alleged and proven, have excused plaintiff’s failure to give timely notice, there are several conclusive answers to the suggestion quoted from her brief.
1. She tendered no such issue and offered no proof to support an issue of that character, had one been tendered.
2. As already pointed o.ut, she, at least, had the ready means of the knowledge which she, in her brief, insinuates she did not possess.
3. The burden was not upon the Order to prove plaintiff's knowledge of what, at least, prima facie, she is presumed to know. A plaintiff may claim no advantage by attempting to shift a burden which the law clearly imposes upon him to the shoulders of his adversary.
That the directing of the notice to Chicago, instead of Columbus, accounts for the plaintiff’s failure to get it into the hands of the Order within the time prescribed, cannot, under the record, be doubted. The misdirection of the notice *433 was due entirely to plaintiff or to her own agent. For such unexplained error defendant cannot be held responsible, nor ■ can plaintiff be relieved from same. The contract required her to give notice to the Supreme Secretary. Mailing that notice, or otherwise conveying it was, under the contract, the business of plaintiff. She was at liberty to select whatever agency of communication she preferred, but it was her duty to get the notice into the hands of the Supreme Secretary within the tjme prescribed in the contract, unless to do so became impossible for reasons beyond the control of plaintiff.
Plaintiff had in her possession a card mailed by defendant to her husband at her residence address. This card was mailed at Columbus on the day preceding the accident, the same being enclosed in an envelope plainly indicating that it had been deposited in the mails at Columbus. On this envelope, in bold type, was the word “IMPORTANT,” the letters used to form this word being very much larger than any other letters appearing on the envelope. The card contained ,at the top thereof, in large, red letters, a warning that notice of accident must be given in ten days to Chas. C. Daniel, Supreme Secretary, and that forfeiture of all claims ■ against the Order was the penalty for failure to comply with this warning. The first two words in this red-letter notice, or warning, were: “Don’t Forget,” the letters forming these two words being much larger than the balance of the sentence giving the warning. It is not entirely clear from plaintiff’s testimony when this card reached her, but it was post-marked, as we have said, at Columbus, on March 25th, the day preceding her'husband’s death. She admitted that it probably came in due course, hence must have been in her possession in ample time for her to have acted upon the warning which it contained, especially if she had resorted to the telegraph in sending the notice, as she might well have done. The character of the card, and the envelope containing the same, indicate an *434 honest desire on the part of the organization to warn its-members against negligence which might work a forfeiture of their claims for. indemnity, and negatives any purpose on its part to unjustly escape responsibility. This card containing the warning as to notice appears to be a stock card, designed and used, in addition to the warning' we have mentioned, to call the attention of members of the Order to assessments, and when the time for paying same would expire.
From the foregoing it is apparent that plaintiff has failed to establish an excuse recognized by law for the failure on her part to comply with the terms of the contract which she seeks to enforce against the Order. The following cases are in point: Railway Passenger Assur. Co. vs. Burwell, 44 Ind., 460; Sherwood, Admr. vs. Agric. Ins. Co., 10 Hun., 593 (17 N. Y., S. C., 593); United Benev. Soc. vs. Freeman, 111 Ga., 355, 36 S. E., 764; Central City Ins. Co. vs. Oates, 86 Ala., 570, 6 So., 83, 11 Am. St., 67; Maddox vs. Ins. Co., 56 Mo. App., 343.
3. It is urged, on behalf of plaintiff, that defendant makes no claim that she did not act in good faith in the matter of giving notice. Here, again, it is sought to place a burden which rightly belong to plaintiff upon the defendant. Having alleged and proved plaintiff’s failure to comply with the conditions of the contract with reference to giving notice,, defendant is not required to go further and prove that her failure was the result of bad faith. Neither is defendant required, as plaintiff intimates, to prove that her breach of an important provision of the contract resulted in injury to it. Nor can we agree with plaintiff’s statement that the record shows, affirmatively, that the defendant’s rights were not prejudiced by the delay in the giving of notice.
There is evidence in the record indicating a very radical change in the attitude of certain important witnesses toward defendant. Their testimony on the .trial by no means harmonizes with their written statements made shortly follow *435 ing the death of assured, and there was evidence tending to show that the bottle containing the arsenic, and the bottle containing the harmless drug which plaintiff contends her husband intended to take, had disappeared or had been destroyed following assured’s death.
These are unpleasant features of this case which we do not care to discuss at length, but plaintiff’s insistence that an investigation could have been made in every respect as satisfactorily after April 14th as before, justifies the brief comments we have here made.
It is true, as plaintiff says, that defendant made no attempt to conduct an investigation after the receipt of the belated notice, but had it done so there are numerous authorities holding that it would thereby have waived the defense of no notice.
4. It might appear from a few opinions that have been handed down by courts in this country that there exists an impression in certain quarters that a contract of insurance must always be interpreted as a unilateral agreement, but, nevertheless, enforcible in all strictness against the insurer; that as to the insured and his obligations thereunder, sue! contracts are not to be taken' seriously, if, by so doing, a for-' feiture may result. In other words, a view that a contract of insurance is mi generis appears to have gained a foothold in this country.
This theory finds no support in reason and is against the overwhelming weight of authority. The decisions which seem to uphold this theory and which were, doubtless, designed to protect the interest of the insured, have had quite a contrary effect;' They have led insurance companies and fraternal organizations, in self-defense, to incorporate in their policies and contracts of insurance restrictive provisions that, in the earlier days, were unknown, or, at least, not common to such contracts.
“A contract of insurance being, then, in essence merely a contract to pay on the happening of a certain condition, *436 the natural inference is, that this contract should be governed by the rules applicable to contracts generally. But the courts have frequently fallen into the error of regarding a contract of insurance as a contract mi generis, so to speak, scarcely governed by the most familiar rules applied to contracts generally. But it is now generally accepted that a contract of insurance is to be governed by the same principles applicable generally to agreements involving pecuniary obligation.” Cooke on Life Ins., sec. 3.
It is quite true that, under certain circumstances, certain provisions in life insurance contracts are to be liberally construed, but, under certain conditions, this rule of interpretation applies to most contracts.
“Policies of insurance are presumed to contain the complete engagements of both insurer and insured in regard to the subject matter embraced in them. They, like all other contracts, must be construed according to the intention of the parties as manifested by the words used and according to their ordinary signification. * * * Courts cannot make contracts for parties; or render a party liable on a different basis from that upon which his liability was stipulated. It is the duty of the court in all cases where the question is simply the determination of the meaning of a written document, to declare its legal interpretation, and it is error to leave its construction to a jury.” Kerr on Insurance, pages 129 and 130.
“Where there is no ground for reforming the contract, the construction of this, (meaning the contract of insurance) as of all other written instruments, depends not upon the presumed intention of the parties, but upon what is the meaning of the words which they have used.” Bunyon — Law of Fire Ins., page 72.
“Contracts of insurance have no particular sanctity over other kinds of agreements, and the same rules of interpretation apply to all alike.” Bacon-Benefit. -Soc. & Life Ins. (3rd Ed:), sec. 177. . .
*437 May on Insurance (4th Ed.), at sec. 3, after considering the illogical attitude of certain writers on life insurance contracts, reaches the conclusion that they are contracts “governed by the same principles which govern other contracts.”
“The provisions of a life insurance policy are construed and applied like the terms of any other contract.” Niblack — • Benefit Soc. & Acc. Ins. (2nd Ed.), sec. 143.
“Policies of insurance are subject-to the rules of construction which are applicable to other contracts.” Joyce on Insurance, secs. 208 and 209.
“Mutual benefit societies, or fraternal organizations, are in effect policies of life insurance and in most respects are governed,by the same rules which prevail in policies.of insurance.” Niblack — Benefit Soc. & Acc. Ins., sec. 143 (2nd Ed.); Bacon — Benefit Soc. & Life Ins. (3rd Ed.), sec. 180; Joyce on Ins., sec. 207.
5. Plaintiff further contends that defendant has waived its' rights to defend upon the ground that the notice was not given in time. She bases her contention upon the following grounds: 1. That defendant has set up in its answer other defenses than, the default in the giving of notice. 2. That it retained the notice after receiving the same, without complaint, or without notice that the same had arrived too late. 3.' That after the notice was received defendant sent the customary rblanks for proof of death and further particulars concerning the accident to plantiff.
We shall presently consider these various grounds upon which waiver is predicted, in the order stated, but before doing so it is well to have before us a definition of the term waiver. In Central City Ins. Co. v. Oates, supra, the Alabama Supreme Court at page 570 [6 So., 85, 11 Am. St., 67], thus defines the term:
“Waiver is necessarily á matter of mutual intention between contracting parties, in the nature of a new contract between them.”
*438 Bowers, in his late work on the “Law of Waiver,” page 19, says:
“Waiver is the voluntary abandonment or surrender, by a capable person, of a right known to him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit.”
For further definitions of waiver see “Words & Phrases,” Vol. 8 (1st series), page 7375, 7376 and 737-9; also 2nd series of same work, Vol. 4, page 1222, et seq.
The first contention upon which waiver is based, namely, that the Order by defending on the ground of suicide was thereby precluded from including in its answer the defense of the failure to give notice within the time provided by the contract, cannot be sustained. Under our Code, Sec. 65, “the defendant may set forth by answer as many defenses and counter claims as he may have,” and notwithstanding the views expressed by the writer of this opinion in the case of Daniel vs. Stock, 21 Col. Ap., 651, 126 Pac., 281, it is probably the impression of the bench and bar of this state generally that, under the decisions of our Supreme Court, a defendant may plead inconsistent defenses; but whether this be so or not we need not now pause to consider, since the defense of suicide and the defense.of failure to give notice, both of which were set up by the defendant in its answer in this case, are not inconsistent defenses in any sense of the word. We know of no precedent for withholding from an insurance company the benefits of the provisions of our Code quoted above:
“When the defendant was called into court to answer the suit it answered and said (or attempted to say), that the death was from a cause not covered by the policy, and besides, no notice of the death was given as required by the contract. Appellant asks us now to say that answer means that the defendant waives the notice. No greater violence could be done to the letter and spirit of the answer than to. *439 give it that meaning. No case cited by appellant would justify such an interpretation.”
Dezell vs. Fid. & Cas. Co., 176 Mo., at page 267, 75 S. W., 1102. The Dezell case is an extremely interesting one because of the very thorough consideration given to the question of waiver, and the array of authorities cited by counsel in their briefs, which are printed in connection -with the opinion. Judge Valliant, who wrote the majority opinion, at page 265 of the State Report (75 S. W., 1113), cited, says:
“Appellant’s proposition is that defendant, by the act of denying in its answer that the policy covered the loss, waived the defense of want of notice, notwithstanding that defense was expressly pleaded also. Some of the cases cited by the learned counsel appellant lead in that direction, but none of them go to that extent.”
At page 267 (75 S. W., 1114), Judge Valliant says:
“There is no necessity for looking into the cases which •hold that when an insurance company informs the holder of a policy, before the period prescribed for making the proof of loss has expired, that it has resolved not to pay the insurance, the policy holder is excused from the duty of furnishing such proofs to the company.”
Nor need we examine such cases, for the one here under consideration does not properly belong to that classification. Speaking for the majority of the court, Judge Valliant sums up, after a most learned analysis of the strongest authorities cited by appellant, thus:
“After a careful study of those cases we are convinced that it was not the intention of the courts to say more than that if the insurance company, before the time for furnishing proof of loss expired, denied its liability and let the policy holder know that it had resolved not td pay the claim, the latter was excused from offering the proofs.”
*440 The Missouri Court then quotes with approval the following from Armstrong vs. Insurance Co., 130 N. Y., 560, at 567 (29 N. E., 993):
“It needs no argument to show that it (the insurance company), was justified in standing upon its legal rights and asserting them in the ordinary way and at the proper time, so long as in doing so it did not mislead the plaintiff to his own harm. It had the right to base its defense to any claim made upon it upon the violation prior to the fire of any provision of the contract, and to require the performance by the assured after the fire of those conditions which he had contracted to perform and which were essential to his cause of action and preliminary to the assertion of any claim upon the policy. And in demanding strict compliance with such condition it did not waive any of its rights under the contract.”
Moreover, the plaintiff filed no motion requiring the defendant to elect upon which defense it would rely, and even if it be conceded that the defendant could not rely upon both defenses, we are aware of no rule which permits the plaintiff, after the trial, to make the election as to defenses for the defendant.
Smith vs. Am. Nat. Ins. Co., 111 Ark., 32, 162 S. W., 772; Aetna Co. vs. Fitzgerald, 165 Ind., 317, 75 N. E., 262; 1 L. R. A. (N. S.), 442, 112 Am. St. Rep. 232, 6 Ann. Cas., 551; Insurance Co. vs. School Dist., 66 Kans., 77, 71 Pac., 272.
In the Arkansas case cited above it is said that:
“The mere assertion of a defense in addition to that of the failure to give notice does not deprive the insurer of that defense, if the assured is invited to incur no expense or trouble, and nothing is done which influences the beneficiary to fail in the performance of that duty.”
It is clear from the record in this case that the Order did not invite plaintiff to incur any expense or trouble, and it did nothing to influence her to fail in the performance of *441 her duty with respect to the notice. All doubt on this score is removed by a letter mailed to the defendant and dated July 25th, wherein counsel for plaintiff uses this language:
“As you have thus far given no indication of any intention to settle this claim, but on the other hand have all the time insisted that you would admit no responsibility * * * the beneficiary has directed us to take the necessary proceedings to enforce the collection of the claim, if possible.”
From this it will be seen that the defendant’s attitude from the beginning was such that the plaintiff fully understood that it admitted no responsibility.
In Aetna Co. vs. Fitzgerald, supra, the Indiana court used the following language:
“We cannot sanction the view that, after the assured has sinned away all right of recovery under the policy, he may yet recover, by proof that the company refused to pay on the ground that the policy did not cover the claim asserted in the notice. The refusel to pay on a wholly different ground, made within the time that the policy holder may take steps to make good his right under the contract, is treated in this state as a waiver per se; but we perceive no reason, after the right is gone, for permitting the policy holder to go to the jury on the question of waiver under proof of the solitary fact that the company had afterwards declined for another reason to recognize the validity of the policy.”
^ee also cases cited by the Indiana court in the Aetna case.
Neither will the plaintiff be heard to complain that the defendant retained the notice without calling her attention to the fact that it had been received too late. The silence of the defendant was not as to a defective notice, which it was possible for the plaintiff to cure had her attention been called thereto, for as was said in St. Louis Co. v. Kyle, 11 Mo., 278, 49 Am. Dec. 74:
“Whether the company is silent or gives objection cannot alter the right of the parties. If the notice is too late, *442 it is the end of the matter. * * * Of what avail to the assured to be told that the notice is insufficient? That it was too late? How could the silence of the insurance company be construed that the notice was in time? It was not the duty of the insurance company to make any objection to the want of notice. It was made the duty of the assured to give the notice, and neither silence on the part of the company nor positive objections could alter its character or insufficiency.”
In Insurance Co. v. Lumber Co., 10 Col. Ap., at 236, 51 Pac., 178, referring to the question of waiver, it is said:
“It is equally true that an intention may not be presumed from the mere possession of knowledge. There must be some evidence in the case tending to show an intention on the part of the agent who has it.”
In Knickerbocker Ins. Co. v. Gould, 80 Ill., 388, the Illinois Supreme Court, referring to the contention that the company waives a notice received too late by interposing no objection to the same, thus disposes of it:
“If the company makes objection, the insured cannot remedy the defect. It is too late, and hence there is neither reason nor necessity for the compnay to speak or be concluded by its silence.”
To the same effect are the following: Connell v. Milwaukee Co., 18 Wis. 387; Travelers Ins. Co. v. Nax, 142 Fed. 567, 73 C. C. A., 649; Johnson v. Md. Cas. Co., 73 N. H. 259, 60 Atl., 1009, 111 Am. St. Rep., 609; Smith v. Haverhill Mut. Co., 1 Allen, 297, 79 Am. Dec. 733; Trask v. State F. & M. Co., 29 Pa. St., 198, 72 Am. Dec., 622; Bowers Law of Waiver, secs. 323, 328 and 333; Joyce on Insurance, sec. 3367.
Plaintiffs third ground for contending that the notice was waived,'namely, that after it was received defendant sent blanks for proof, etc., is equally unavailing. All blanks thus forwarded by the Order had stamped upon them the following, or a similar statement:
*443 “In sending this blank this Order does not waive any provision of the constitution, but expressly reserves the same.”
Furthermore, all blanks were sent only upon the request of the plaintiff. At no time did the defendant call upon plaintiff for proof of any sort, nor did it induce her to spend time or money in the preparation of her case. Moreover, it will be seen from the quotation already made from defendant’s constitution, it is expressly provided therein that the forwarding of blanks shall not work a waiver of any defense which the Order may have. That plaintiff fully understood defendant’s attitude in this respect is made apparent by the letter of July 25th, written by her attorney, to which we have already referred, and from which we have quoted. We are forced by the record in this case to agree with the statement made by plaintiff’s counsel in this letter to the effect that defendant had at no time given any indication of an intention to settle plaintiff’s claim, but, on the other hand, it had-at all times insisted that it would admit no responsibility.
The conduct of the-defendant in at all times persistently refusing to admit liability, does not satisfy the definition of waiver, or afford a ground upon which waiver may be predicated.
Plaintiff having failed to serve notice within the time required by the contract, and thus having violated an important provision of the very contract upon which she is' relying, and her proof not bringing her within any exception to the rule requiring the service of notice as a condition precedent; and the defendant not having waived any of the conditions of the contract, the judgment of the trial court must be reversed.

Reversed.

Bell, J., concurring.
*444 King, J., specially concurring.
Hurlbert & Morgan, J., J., dissenting.