Lillian Smith MOULDEN, Formerly
Lillian M. Smith, Plaintiff,

v.

KANSAS CITY LIFE INSURANCE
COMPANY, a Corporation,
Defendant.

Civ. A. No. 4048.

United States District Court
D. Colorado.

July 14, 1955.

Paul A. Hentzell and Don Lorenz, Denver, Colo., for plaintiff.

Long, Hyman & Smart, Lawrence A. Long, Denver, Colo., for defendant.

KNOUS, Chief Judge.

Plaintiff, the beneficiary of a term life insurance policy, commenced this action against the defendant insurance company in the District Court of Routt County, State of Colorado. On defendant's motion, the action was removed to this Court.

The matter stands on motions for summary judgment filed by both parties. The facts have been stipulated.

It appears therefrom that on September 30, 1948, Norman N. Smith made application to S. Morton Howard, the authorized agent of the defendant, for a $5,000, five-year term life insurance policy. At the time the application was completed, Smith gave Howard a thirty-day interest bearing promissory note in the amount of $50.50 with interest, a sum equal to the first annual premium. This note was retained by the agent and never was endorsed over to the defendant. The application was then forwarded to the J. T. Allen Agency of Denver, Colorado, which in turn forwarded it to the defendant. The application and plan were approved by the defendant on October 27, 1948, and a life insurance policy was issued on that same date to

Smith, with the plaintiff herein designated as beneficiary. Also on October 27, 1948, the policy was registered with the State of Missouri, Division of Insurance, Department of Business and Administration, and on October 28, 1948, a credit of $50.50 was entered on the premium card of the defendant giving Smith credit for payment of the first full premium. The policy was then sent to the J. T. Allen Agency which in turn forwarded it to Howard, and on November 11, 1948, Howard delivered the policy to Norman N. Smith at Hayden, Colorado and obtained a receipt for the policy. At that time the aforesaid promissory note was returned to Smith by Howard, and Smith issued a check to the order of defendant in the amount of $50.50, dated November 11, 1948, and drawn on the Routt County National Bank, Steamboat Springs, Colorado. The check was canceled as paid by the bank on November 18, 1948.

No further premiums were paid upon the policy, either by Smith, or by any other person. Smith died on December 11, 1949. The plaintiff gave due and timely notice and proof of death to the defendant. No payment of the benefits has been made by defendant to plaintiff under the policy, and defendant has refused and continues to refuse to make any payment thereunder.

The policy and the application, which together constitute the entire contract between the parties, contain the following applicable provisions:

"When effective. This Policy shall take effect only during the life time and good health of the Insured either (a) upon delivery to the Applicant and payment of the first premium hereon, or (b) on the day the application for this Policy is approved at the Home Office of the Company on the plan, amount and premium rate applied for if the first premium in full in cash has accompanied said application.

"If this application is accompanied by the first premium in full in cash, it is agreed that the Company assumes no liability whatever unless and until this application is approved at the Home Office of the Company for a policy on the plan, amount and premium rate applied for while the applicant is alive and in good health, after which the insurance shall be effective, subject to the terms and conditions of the policy, on the day this application is approved at the Home Office of the Company.

"If this application is not accompanied by the first premium in full in cash it is agreed that the Company assumes no liability whatever until a policy of insurance is actually delivered to me during my lifetime and while I am in good health, and any money, check, note, obligation or other thing of value, given to the Company or its agent, on account of the first premium on the policy applied for shall be held by the Company merely as a deposit and not as payment until such time as the policy of insurance is issued and delivered to me during my lifetime and while I am in good health, after which the same shall be applied on such first premium charge, otherwise said deposit shall be returned to me or my heirs, executors or administrators.

"This Policy is issued in consideration of the stipulations, agreements and representations made in the application for this Policy, a copy of which application is attached hereto and made a part hereof, and said Policy and application constitute the entire contract between the parties hereto, and in further consideration of the payment of the first premium of Fifty Dollars and Fifty Cents, which is the premium for insurance hereunder ending on the twenty-seventh day of October, 1949. This Policy will be continued upon the further payment of a premium of like amount hereafter until the Fifth anniversary of this Policy

or until the prior death of the insured.

"* * * payment thereof, without interest charge, may be made within a grace period of thirty-one days from the due date of such premium, during which grace period this Policy will remain in force. If death shall occur during such grace period said premium, if still unpaid, will be deducted from the amount payable hereunder.

"Amount of Insurance applied for? $5,000.00.

"Amount of Annual premium? $50.50.

"Check mode of first year premium payment and insert amount: [x] Annual $50.50.

"In witness whereof, the Kansas City Life Insurance Company has caused to be affixed the signatures of its President and Secretary and the countersignature of its Assistant Secretary, at Kansas City, Missouri this Twenty-Seventh day of October, A.D. 1948."

The dispute, therefore, centers itself on the question of what was the effective date of the policy.

It is the contention of the plaintiff that the policy went into effect on November 11, 1948, the date the policy was delivered to the insured; that as the annual premium then was paid, the insured obtained protection for one year from that date, or until November 11, 1949; that the thirty-one day grace period began to run from that date and, therefore, on the day the insured died, December 11, 1949, he was within the coverage of the policy.

Defendant first asserts that the effective date was October 27, 1948, the date the defendant approved and issued the policy; that the policy remained in effect until October 27, 1949 at which time the grace period began to run and therefore Smith was not within the terms of coverage on his death. Defendant further contends that, regardless of the effective date, the policy by its own terms expired on October 27, 1949 and by reason of which Smith died beyond the grace period and was not within the terms of coverage.

As appears from the provisions quoted above, the policy by its terms could only become effective in one of two ways, i. e., a) upon delivery to the applicant and payment of the first premium, or b) on the day the application is approved at the Home Office of the defendant, *if the first premium in full in cash has accompanied the application.* (Emphasis supplied.)

Although there is authority to the effect that a promissory note can operate as payment, in the first instance, of an insurance premium, Hill v. Capitol Life Insurance Co., 91 Colo. 300, 14 P.2d 1006, the parties by their contract, stated that the first premium must be paid in full "in cash" in order for the policy to take effect when the company approves the plan. It specifically states that acceptance by defendant's agent of a promissory note will not constitute cash or payment in the first instance, but will act merely as a deposit until the policy is delivered to the insured.

 But defendant contends that at the time of approval and issuance of the policy, defendant, having knowledge of the condition, intended to and did treat the promissory note as "payment in full in cash" of the first premium and therefore waived the condition of payment "in cash" as defined by the contract.

"Waiver", as defined in United Commercial Travelers of America v. Boaz, 27 Colo.App. 423, 150 P. 822, 828, " 'is the voluntary abandonment or surrender, by a capable person, of a right known to him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit.' "

As evidence of waiver defendant calls attention to the premium card upon which defendant entered a credit for the amount of the first annual premium. The premium card of which deceased, so far as appears, had no knowledge of notice, was kept by defendant within its

records at its home office. In other words, the defendant here contends in effect that it has waived the right to have the first premium paid in cash and wants to avail itself of its own waiver to its own benefit. Such may not be done.

In Atlas Life Ins. Co. v. Schrimsher, 179 Okl. 643, 66 P.2d 944, 948, the Court stated:

" * * * An individual cannot waive his rights by words spoken to himself, which no third person hears, or by conduct which is never seen; nor should an organization of individuals be held to a waiver by an arrangement entirely within the entity of the organization."

In 67 Corpus Juris 294, it is said:

" 'Waiver' is a doctrine, resting upon an equitable principle, which courts of law will recognize, that a person, with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position and conduct to the injury of another; a 'rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantage thereby through the aid of courts.' " See, also, 92 C.J.S., p. 1050.

The successful application of the doctrine of waiver by a litigant who "waived" the condition, without proof of his opponent's acquiescence in or knowledge of the waiver would, in every instance, defeat the basic principles of the doctrine. Accordingly, in the Court's opinion the defense of waiver is not available to the defendant herein.

■■ Since payment in full in cash of the first premium did not accompany the application, subdivision (b) of the "When Effective" clause did not come into effect. Without more it would necessarily follow that subdivision (a) of that same clause would control as to the effective date, which would be November 11, 1948, the date of the actual delivery and payment of the first premium by the insured. But the policy bears the date of October 27, 1948, and states that the anniversary of the policy was October 27. As is stated in Shinall v. Prudential Ins. Co. of America, 91 Colo. 194, 14 P. 2d 183, 184:

"It is thus apparent that the most that can be said for this policy, from the standpoint of defendant, is that it is ambiguous. Hence, in the absence of contrary and controlling authority, that ambiguity, conformable to a universal rule, must be resolved against defendant as the writer of the doubtful document."

Thus, insofar as this contention goes, it must be held that the policy went into effect on November 11, 1948, the date it was delivered to the insured and the insured paid the first premium.

Defendant, however, lastly, asserts that regardless of the date the policy took effect, the policy by its own terms expired on October 27, and therefore the insured died beyond the grace period provided and was not within the terms of coverage.

The Court is convinced that this contention must be resolved adversely to the defendant upon the authority of Shinall v. Prudential Ins. Co., 91 Colo. 194, 14 P.2d 183; Columbian National Life Ins. Co. v. McClain, 115 Colo. 458, 174 P.2d 348, 169 A.L.R. 278, and American Nat. Ins. Co. v. Gregg, 123 Colo. 476, 231 P. 2d 467. As is stated in the Shinall case, supra, 14 P.2d page 184:

"The application for the policy in question was dated February 23, the policy (which gave sixty days grace on premium payments) was dated March 21, and the first (and only) premium was paid and the policy delivered April 20, all in 1929. The insured died June 4, 1930. The question is: Did the period of grace begin to run March 21, 1930 (one year from the date of the policy), or April 20, 1930 (one year from the date of the first payment and delivery)? If the former, the policy had lapsed at the date of death and the judgment was right; if the latter,

it had not lapsed and the judgment must be reversed.

"The application was expressly made a part of the policy. It provided that if the full first premium was not paid at its date (and it was not) the policy should not take effect until issued and delivered and said premium paid. The policy itself, a twenty-year endowment, provided that the annual premium, $98.55, was 'payable on the delivery of this policy.' The grace clause recited, 'If this policy after being in force one full year from its date shall lapse for non-payment of premium, the company will continue in force the insurance under the policy for a period of sixty days from the due date of such premium, as specified on the first page hereof.' Said due date, so specified, was 'the 21st day of March, in every year during the continuance of this policy.'

"It is unquestioned that $98.55 was intended as the annual premium for each year of the total term of this policy, not the premium for eleven months or six months. By the terms of the application, which became as much a part of the contract as any other portion of it, the policy did not take effect until April 20, 1929. If the premium then paid carried it only to March 21 of the following year, the insured obtained but eleven months' protection for one year's premium, contrary to its recitals as to annual premiums. Furthermore, the insured had but thirty days' grace on his premium payment instead of sixty as specifically provided. On the other hand, if the policy took effect April 20 as the application, an integral part of it, specifically provided, and grace be figured from that date, as justice clearly requires, then that portion of the contract which provided for payment of premiums and calculation of grace from the 'due date,' which is specifically stated to be 'the 21st day of March in every year,' is violated. It is thus apparent that the most that can be said for this policy, from the standpoint of defendant, is that it is ambiguous. * * *"

■ The defendant cites as authority for a contrary holding, the case of New York Life Ins. Co. v. Tolbert, 10 Cir., 55 F.2d 10. The Colorado Court, in the Shinall case, concedes that its holding is inconsistent with the Tolbert case, supra. But, since the action herein in concern is based upon a contract made and to be performed in the State of Colorado, this Court is bound to follow the well-settled law of that state, even though it may conflict with a decision of our own Court of Appeals. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Therefore, as the policy went into effect on November 11, 1948, and by payment of the annual premium the insured obtained one year's protection, or until November 11, 1949, plus the thirty-one day grace period, the insured, dying on December 11, 1949, was within the coverage of the policy. Accordingly, it is ordered and adjudged that the cross motion of plaintiff for summary judgment be granted and that the motion of defendant for summary judgment be denied. Since under Rule 52(a), 28 U.S. C.A., findings of fact and conclusions of law are unnecessary on decisions or motions for summary judgment, counsel for plaintiff within 20 days shall prepare and submit a form of judgment consistent with this order and memorandum opinion, which shall be settled by notice if not stipulated as to form.