## No. 10,164.

## HART *v.* ZAITZ.

Decided December 4, 1922.

Action in damages for fraud and deceit. Judgment of dismissal.

### *Affirmed.*

1.  PLEADING—*Fraud and Deceit—Complaint.* Allegations of a complaint in an action of deceit, reviewed and held not to state a cause of action.

2.  FRAUD—*Deceit—False Representations—Promises.* In an action of deceit based on false representations, the false representation or representations must relate to a past or existing state of facts.

    Promises made with a present intention not to perform, are not a proper basis for an action of deceit.

3.  *False Representations.* In an action of deceit based on false representations, the false representations must be of a material fact, influencing and inducing the transaction and constituting its proximate and immediate cause.

4.  *Misrepresentations—Damage.* Even if a representation is fraudulent and of a past or existing fact, and the party to whom it is addressed acts upon it, an action of deceit will not lie unless damage has resulted.

5.  PLEADING—*Information and Belief.* It is not good pleading to make allegations on belief. The allegation, if it cannot be stated positively, should at least be made on information and belief.

6.  *Fraud and Deceit—Unfulfilled Promises.* An allegation of unfulfilled promises has no place in a complaint for damages by deceit.

*Error to the District Court of Lake County, Hon. Francis E. Bouck, Judge.*

Mr. H. L. LUBERS, Mr. W. E. CLARK, for plaintiff in error.

Mr. JOHN A. EWING, Mr. PAUL W. CRAWFORD, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action of deceit, based on false representations and promises said to have been made by the defendant to the plaintiff, to the damage of the latter in the sum of about $26,000. No material evidence was taken at the trial. Plaintiff's first witness was asked a few preliminary questions, of no importance in this review, when defendant objected to any further evidence, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The court, upon argument, sustained defendant's objection and ordered the action dismissed at plaintiff's cost. In view of the errors assigned and argued, it will shorten the discussion and at once bring into view the theory of the plaintiff, if the allegations of the complaint are summarized.

That pleading alleges that plaintiff and defendant were the organizers of, and caused to be incorporated, under the laws of this State, The Hart-Zaitz Mercantile Company, and shortly thereafter mercantile establishments were opened in the city of Leadville and in Redcliff. The business thereafter, and down to the present time, prospered and enhanced in value. A few years after incorporating the plaintiff sold to C. T. Menzel his interest, represented by 1767 shares, of a total of 4,000 shares, of the capital stock of the company. In October, 1916, the defendant Zaitz, with intent to cheat, defraud and injure the plaintiff, came to the city of Pueblo, where plaintiff then resided and was engaged in the banking business, and fraudulently represented and stated to the plaintiff that the said Menzel was trying "to do him, the said Zaitz, up" and, therefore, he desired to get rid of Menzel, and requested plaintiff to purchase the latter's share of the corporate stock and again associate himself with defendant in the active management and conduct of the business; whereas, in truth and in fact, no such condition as stated existed, but, on the contrary, Menzel had theretofore agreed to give

to the defendant $2500 for his services in the event that he secured some person to purchase from Menzel his capital stock in the company. That this stock, though having a par value of only $10.00 per share, had an actual and book value in excess of $30.00 per share. That at all times the defendant owned the majority of the capital stock, the total value of which was $40,000.

The plaintiff, when approached by the defendant with this proposition of buying Menzel's stock, stated to defendant that he had not sufficient money to pay for it; whereupon the defendant stated that the company had a large surplus in excess of the sum of $100,000, and, although no dividends had theretofore been declared or paid, the defendant then said that if plaintiff would purchase the Menzel stock, he, the defendant, as the owner of the majority, and as controller of the affairs of the company, would thereafter annually declare and pay on such shares dividends of at least $6,000 or $8,000 a year, and that he would assist plaintiff in the making of payments to Menzel on account of the purchase, and as evidence of his ability to render this assistance, he exhibited to the plaintiff his bank book showing a deposit to his credit in a Denver bank of more than $70,000. That the plaintiff, believing the representations of the defendant, so made, to be true, induced wholly thereby and relying thereon, directly negotiated with Menzel, without the aid of defendant, and purchased his stock for a total sum of $35,340, which purchase price he agreed to pay in installments, part in cash and part in promissory notes and equities in certain real estate. Deducting the amount thus to be paid in cash and equities, the deferred payments amounted to $26,900, were evidenced by his promissory notes to Menzel, bearing interest at the rate of 7 per cent per annum, and these deferred payments were secured by the capital stock so purchased. That before the consummation by plaintiff of the purchase, the defendant was fully informed and advised by the plaintiff of the terms and conditions thereof, in the event the purchase was made, and the defendant thereupon advised

the plaintiff to consummate it, as he, the defendant, would either cause, as already stated, annual dividends to be declared and paid upon this stock, or would otherwise advance money with which to make the deferred payments as they became due, and, relying upon these promises, the plaintiff made the purchase from Menzel upon the terms and conditions stated.

As paragraph 12 of the complaint, which the plaintiff considers vital, was stricken from the complaint on motion of the defendant, and as it will be referred to later in the opinion, it is quoted here in full:

"12.  Plaintiff further avers the fact to be that it is his belief that the defendant then and there entertained a mental reservation to not furnish to this plaintiff in any of the ways alleged money with which to meet said payments, or any thereof, but that he was then and there determined to cheat and defraud this plaintiff out of his interest in said business as evidenced by said capital stock in the event of its purchase by this plaintiff, and in particular to cheat and defraud this plaintiff out of the money and property which he then and there knew this plaintiff was to pay and convey to said Menzel."

After acquiring ownership of the Menzel stock, the plaintiff entered actively into the affairs of the company and continued thereafter until the month of July, 1918, a period of nearly two years.  As the deferred payments of the purchase price, evidenced by the notes, were about to become due, plaintiff reminded the defendant thereof and asked that the arrangements for declaring dividends or furnishing money, as hereinbefore mentioned, should be made so that these notes might be paid.  The defendant refused the request and stated that he would not permit any dividends to be declared or paid by the company, and advised the plaintiff to try to raise money from some other source with which to pay the maturing debt.

Plaintiff was unable to secure money from other persons, and, upon information and belief, alleges that his inability to secure loans of money was thwarted by the

wrongful acts of the defendant, and that the persons applied to by the plaintiff for loans were informed by the defendant that, though the mercantile company had a large surplus from which dividends might lawfully be declared and paid, he, the defendant Zaitz, would not permit any dividends whatever to be declared nor would he furnish money to the plaintiff to make any of the payments on the notes evidencing the purchase price, except the sum of about $10,000, which was furnished to him by the defendant on condition that the plaintiff should surrender, for cancellation—which he did—500 shares of his capital stock in the amount of $10,000, and an additional $700 which the defendant assisted the plaintiff to borrow from a bank in Leadville with which to pay accumulated interest, by virtue of which forced arrangement the plaintiff's shares in the company were reduced from 1767 to 1267 shares; that, though this book or actual value, at the time of this retirement, was in excess of $30.00 per share, nevertheless, by reason of these false and fraudulent representations, as hereinbefore alleged, made by the defendant, the value of plaintiff's stock holdings were reduced in value more than $5,000, to his damage in such sum.

The plaintiff, however, was able to secure temporary extensions from Menzel until June, 1918, when Menzel demanded the payment of the past due debt and threatened foreclosure of the collateral stock which he held if payment was not made. Plaintiff thereupon advised the defendant of this attitude of Menzel and again urged him to keep his former contract with the plaintiff, and either cause dividends to be declared or otherwise furnish money with which to make payment to Menzel. The defendant refused to do so, and then stated to the plaintiff that he believed he knew of a man who would purchase the plaintiff's stock. He thereupon left the plaintiff but subsequently returned and stated that, by telephone with one Deidesheimer, he had induced the latter to purchase this stock and pay to Menzel the money owing to him by plaintiff and to pay the bank the interest money, and directed

the plaintiff to advise Menzel to come to his, defendant's, place of business, where all of said outstanding notes that were due, and also the notes not due, would be paid in full, and then and there furnished to the plaintiff a draft with which to make such payment, representing at the time that the money had been furnished by Deidesheimer.

Plaintiff says that the fact was that the money evidenced by this draft, which was used to make payment of the Menzel debt, represented money belonging to the defendant himself and not to Deidesheimer, and defendant, then and there, by such transaction, became the owner of the stock, which transaction was in furtherance of the intent of the defendant to cheat, defraud and injure the plaintiff; that the defendant at the time of making such false and fraudulent statements, knew that they were untrue and that by reason of said fase and fraudulent representations about the money furnished to the plaintiff for paying off the Menzel indebtedness, plaintiff was compelled to, and did, accept the money so tendered to him by the defendant and thereby parted with all of his remaining interest in the capital stock of the company; that at' the date of said sale thereof, the same was worth more than $30.00 per share and that by reason of the enforced sale by plaintiff of his remaining shares of stock, and of the false and fraudulent statements of defendant so wrongfully made, as hereinbefore alleged, the plaintiff was damaged in a sum in excess of a total sum of about $26,000, for which he asks judgment of the court and a body execution against the defendant, and for costs.

Defendant's motion to strike certain portions of the complaint was granted as to two specifications, and overruled as to all others. These rulings, which were assigned as error and argued to some extent in the briefs of counsel, are of no material importance, so far as the disposition of this case is concerned, and no consideration thereof will be given to them.

After the rulings upon this motion, defendant was given leave to file, and did file, a demurrer to the complaint,

which was withdrawn, and an answer was filed denying all of the material allegations of the complaint as to the charges of fraudulent statements by the defendant.

As already stated, the court, after some immaterial and preliminary evidence had been elicited from a witness for the plaintiff, directed a verdict for the defendant for failure of the plaintiff to state a cause of action, or, as expressed by defendant's counsel, because the complaint "does not state or show a primary right of the plaintiff and a wrongful act or omission of the defendant which involves that right."

Practically the only question for decision is as to the sufficiency of the complaint. It is to be borne in mind that the action is not for breach of contract by defendant, but for fraud and deceit, practiced by him on the plaintiff.

In his brief the plaintiff by his counsel admits that there are a number of decisions of this court, antagonistic to his view, at least in part, defining what shall be and are circumstances and conditions under which an action of fraud or deceit may be maintained and in making this statement, says that he has in mind that this court has repeatedly held that the right of action in fraud or deceit must be based upon a false representation or representations relating to a past or existing state of facts. Plaintiff also admits that this court has repeatedly held that promises made with a present intention not to perform, while they may be questioned from a moral standpoint, are not a proper basis for an action in fraud or deceit. Counsel states, however, that the large majority of the courts of the country have held to the contrary, but that this court has declined to follow the rule of what is said to be the majority, which gives a right of action, in the circumstances stated, based upon promises when there was present an intention on the part of the promisor not to perform them.

The theory of the plaintiff seems to be that, while he alleges in his complaint that the defendant, in the event that he bought the shares of the stock from Menzel, though his promises, to be fulfilled in the future, made to have

dividends declared or otherwise provide sufficient money to the plaintiff to make the deferred payments on the stock, are not actionable, still they may be properly alleged as a part of an entire scheme to defraud, as outlined in the complaint, and thus be relied upon, in connection with misrepresentations as to past or existing facts, to establish the fraud and deceit alleged.

Counsel say that they do not have in mind any decision of this court to the contrary. They seem to consider the facts which are alleged in the complaint as one continuous transaction, conceived in iniquity, and that it is not possible to separate them. They quote from Black on Rescission and Cancellation, Vol. I, Sec. 90, found at page 228, which states that the majority of the decisions hold such future promises actionable when they are employed in connection with false statements of past or existing facts. The author states that there are a number of reputable courts which hold to the contrary, and among them, this court.

In their attempt to spell a good cause of action out of this complaint, counsel say that neither our established rule that a false representation, to constitute a basis for an action of deceit, must be of a past or existing fact or facts; nor another equally well-established rule, that promises made with a present intention not to perform, are not only not violated by, but that conformity to both rules is observed in, this complaint.

Let it be clearly understood at the outset that plaintiff in his briefs says that the recovery here of damages is sought because, and on account, of the alleged fraud and deceit of the defendant in procuring plaintiff to purchase of one Menzel shares of stock of the Mercantile company, and for damages sustained by his subsequent fraudulent conduct in inducing the plaintiff to sell his then remaining interest in the stock to Deidesheimer. It would seem that only one cause of action is attempted to be pleaded. If well pleaded, apparently at least two separate causes of action are here present, each based upon its own uncon-

nected facts and separated one from the other, in time, by the period of nearly two years. As no specific objection was taken below to the pleading of two separate causes of action in one count or statement, we will not discuss this particular objection and dismiss it with the observation that there is no necessary connection of the transaction for the purchase, with the sale of the stock by plaintiff. To show the fallacy of plaintiff's contention, we re-produce, in substance, the argument of his counsel made to uphold his two contentions just referred to: 1. The false representations of existing facts in this complaint are said to be the statement that Menzel was trying "to do up" Zaitz, and the concealment by the defendant in his conversation with the plaintiff that defendant was to get $2500 from Menzel as a commission if he procured a purchaser; 2. The rule that non-performance of a promise, viz: to furnish, in one of two ways, money to pay for the stock, with no present intention to keep it, is observed in this complaint, because, while it is not actionable itself, in an action of deceit, yet as such non-fulfilled promise is alleged as a part of, and in connection with, an alleged fraudulent scheme, it is good pleading.

We first wish to say that these are not the only rules applicable to an action of deceit. It is familiar learning that the false representations must be of a material fact, and, as stated in *Wheeler v. Dunn*, 13 Colo. 428, at page 437, (22 Pac. 827) it " 'must be one necessarily influencing and inducing the transaction, and affecting and going to its very essence and substance. * * * A misrepresentation goes for nothing unless it is a proximate and immediate cause of the transaction. It is not enough that it may have remotely or indirectly contributed to the transaction, or may have supplied a motive to the other party to enter into it. The representation must be the very ground on which the transaction has taken place. The transaction must be a necessary, and not merely an indirect, result of the representations.' "

This quotation is taken from Kerr on Fraud and Mis-

take, and was quoted with approval in *Improvement Co. v. Cowan,* 5 Colo. 320, and in *Adams v. Schiffer,* 11 Colo. 15, 28, 17 Pac. 21, 7 Am. St. Rep. 202. See also: *Moore v. Carrick,* 26 Colo. App. 97, 140 Pac. 485; *Dingle v. Trask,* 7 Colo. App. 16, 19, 42 Pac. 186; *Farris v. Strong,* 24 Colo. 107, 48 Pac. 963; *Lembeck v. Gerken,* 86 N. J. Law, 111, 90 Atl. 698.

Then, too, there is no averment in the complaint that plaintiff Hart did not know, when his contract with Menzel was made, about the $2500 commission. It is doubtful if either of these two alleged fraudulent representations, or, speaking more accurately, one fraudulent representation and one concealment of a fact, is so material as to comply with the test laid down in the foregoing cases.

Another doctrine applicable here is that, even if a representation is fraudulent and of a past or existing fact, and the party to whom it is addressed, acts upon it, an action of deceit will not lie, unless damage has resulted. It is a bit difficult to perceive how Hart suffered injury when he bought stock for $20.00 a share, which he himself alleges was worth $30.00 a share. The mere averment that Menzel was trying "to do up" Zaitz, and the concealment about commission Zaitz was to receive for the sale, were false and believed to be true by the plaintiff and so acted upon by him, does not necessarily mean that these statements were the proximate cause of plaintiff's injury, or that he suffered any injury. It is a far more reasonable inference from the language of the complaint, that the proximate influence, and the proximate cause, which led Hart to buy, was the fact that he was getting for $20.00 a share, stock worth $30.00.

The fact, if it be a fact, that plaintiff made the purchase of this stock as the result of what was said to him by the defendant, or because the defendant concealed from him certain material facts, the uncontroverted fact that the plaintiff suffered no damages as the result of his purchase, is a sufficient reason why this action may not be maintained.

2. The second rule above mentioned is also violated. If non-performance of the promise in itself gives no right of action, it is not good reasoning to say that, because it is alleged as a part of a fraudulent scheme, it adds anything whatever to a cause of action based on false representations of a past or existing fact. To give it any such effect would absolutely nullify the rule of this court that such a promise is not actionable in the character of action we are considering. In an action of deceit, what possible strength to false representations of existing facts, which are actionable of themselves, is imparted by allegations of non-performance of promises made with no intent to perform, which are not actionable? It is false reasoning to say that a non-actionable cause of action strengthens a good cause of action sufficient in itself. Plaintiff's counsel ingeniously and plausibly argue the point, but to yield our assent would be to reverse a long line of our previous decisions whose doctrines we are not inclined to overthrow.

As to paragraph 12, which was stricken, it was properly eliminated, even though a wrong reason was given for the ruling. In the first place, it is not good pleading to allege that plaintiff "believes" defendant entertained a mental reservation not to furnish funds to pay for the purchased stock. Such an allegation, if it can not be made positively, should, at least, be made on information and belief. But if that defect in the complaint is waived, the entire paragraph should have been stricken, because it is, at best, an attempt, though an ineffective one, to inject into the case the issue of non-fulfilled promise, which we have already held has no legitimate function to perform in this kind of an action.

Finally, the plaintiff invokes, as authority for his contention that allegations of an unfulfilled promise, in connection with false representations, state a good cause of action, two of our late decisions: *Martinez v. Martinez*, 57 Colo. 292, particularly at page 298 and top of 299, (141 Pac. 469) where Judge Garrigues says:

"The testimony in this case discloses that the agreement was made in perfect good faith. There is nothing in the evidence which raises a presumption or inference that the promise was made with no intention at the time, of performing it, and the pleadings contain no such averment. The case is based upon the theory of a failure to keep the promise of maintenance, and the doctrine is confined to cases of this character."

And *Baker v. Allen,* 68 Colo. 59, at page 61, (189 Pac. 4) where the following language is used:

"The sale was made, not upon a false statement as to a fact, but upon a *promise* to pay. This is not a misrepresentation in law. Defendant, if he so promised, was guilty only of a breach of contract when he failed to pay. There is nothing in the evidence to show an intent, when the promise was made, not to perform it. In the absence of proof of such an intent, it must be held that the title passed, and there was no conversion, and hence no tort."

We fail to see what support of plaintiff's contention either of these cases furnishes.

The Martinez case was an action to set aside a deed and cancel a contract, not an action in deceit. The quoted remark of the court was apparently made in answer to a contention there, that an unfulfilled promise was properly a feature in that case. The court evidently thought it was not, because, from the language above quoted, it appears that, in the view of the judge writing the opinion, the doctrine as to an unfulfilled promise was immaterial, even in that sort of an action.

In the Baker case Judge Teller, who wrote the opinion, certainly did not intend to convey the idea that, in an action of deceit, an intent, when a promise was made, not to perform it, was of material importance. The first cause of action in the complaint there was deceit; the second was for conversion. The reference to the intent not to perform applied not to the first, but only to the second cause of action. And as to the claim there made that such

intent prevents the passing of title, the court answered that, as there was no such intent present, title passed and there was no conversion. That Judge Teller restricted his comment upon intent to the second cause of action, is apparent when immediately after the above quotation, he cited, with approval, *People v. Healy,* 128 Ill. 9, 20 N. E. 692, 15 Am. St. Rep. 90, where the court said:

"A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise."

It is apparent, therefore, from that case that this court was merely reaffirming many of its previous decisions, that the fact that there was an unfulfilled promise to perform, is not at all material in an action of deceit. The court properly observed, while such element was not material in an action of deceit, the party who claimed to be affected, might sue upon the promise because of its non-fulfillment. We may be permitted to add that the fundamental error in this complaint is that the issue of an unfulfilled promise, which is sought to be injected here, has no place in an action of deceit, although it might be material in a suit for a breach of contract. Plaintiff, having waived the breach of the contract, and sued for deceit, must be held to the rules laid down by our previous decisions in actions of this character. The entire argument is a fervent and able one for a repudiation of our previous decisions, but so long as they stand, this action may not be maintained. It follows that the judgment of the district court must be affirmed.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE WHITFORD sitting for MR. JUSTICE BURKE, concur.