## No. 16,077.

Lipset v. Davis et al, as members of the Colorado State Board of Medical Examiners.

(203 P. [2d] 730)

Decided February 14, 1949. Rehearing denied March 7, 1949.

Messrs. ROGERS, BRUNO & ROGERS, Mr. CURLEY C. HOFF-PAUIR, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. WILLIAM A. SACKMANN, Assistant, Mr. DONALD F. CLIFFORD, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to plaintiff in error as the doctor, and defendants in error, who are officers or members of the Colorado State Board of Medical Examiners, will be designated as the Board.

December 2, 1947, the doctor filed his complaint in the trial court. Thereupon the court directed the issuance of a citation to the Board to show cause why the name of the plaintiff was not carried upon the rolls of the State Board of Medical Examiners as a person authorized to practice medicine. The Board filed a motion to dismiss on the grounds that: (1) The complaint failed to state a claim against the Board upon which relief could be granted; and (2) that the court was without

jurisdiction of the subject matter. The court sustained the motion, dismissed the action, and entered judgment in favor of the Board for costs. To review this judgment the doctor sued out a writ of error.

For the purposes of the motion to dismiss, the following material state of facts set forth by the doctor in his complaint and the amendment thereto, is admitted:

1. The doctor was duly licensed and admitted to practice medicine in the State of Colorado January 6, 1925.

2. March 1, 1933, the said license of the doctor was cancelled by the Board, without hearing or notice to the doctor, under the asserted authority conferred upon the Board by section 11, chapter 109, '35 C.S.A., which provides for the payment by all medical licentiates of an annual registration fee. The said statute contains the following language: "If any licentiate fails for three consecutive years to pay the annual registration fee it shall be the duty of the board without hearing or notice to cancel his license subject to reinstatement. If application for reinstatement is made the board shall reconsider the moral character and professional qualifications of the applicant upon notice and hearing before ordering reinstatement, and unless such showing shall thereupon be made to the board as would entitle the applicant to the issuance of an original license reinstatement shall be denied."

3. There was no requirement for the payment of an annual registration fee in 1925 at which time the doctor was licensed. The above mentioned statute was adopted in 1929.

4. The doctor paid no annual registration fee at any time prior to March 1, 1933, when the Board cancelled his license. The doctor had no actual knowledge of the annual registration fee requirement provided by the 1929 statute.

5. The doctor became a nonresident when, from 1932 to 1934, he was engaged in the study of medicine at the University of Berne, School of Medicine, Berne, Switzer-

land, and upon his return he was employed by the United States Government as a medical officer in its Industrial Medical Branch at the Port of Embarkation, Brooklyn, N. Y., in which service he has continued ever since.

6. The doctor had no knowledge or notice of the cancellation action taken by the Board until November, 1944, when the Character Investigating Committee of the United States called that fact to his attention.

7. January 15, 1945, the doctor by letter addressed to the Board requested reinstatement of his license to practice medicine in Colorado and offered to pay any unpaid annual registration fees.

8. The request was denied by the Board secretary who informed the doctor that he could only be reinstated pursuant to the statute of 1929; that under said statute he must possess qualifications entitling him to the issuance of an original license; that the medical school issuing the diploma upon which the doctor was admitted to practice in 1925 was no longer on the accepted list; that to secure an original license he would be required to meet all the provisions of the Basic Science law (adopted in 1937).

9. On February 27, 1946, the doctor submitted a number of exhibits (which are not preserved in the record) which, it is contended, established his further qualifications to practice. These were rejected by the Board and returned to the doctor.

10. The doctor cannot meet the requirements of the Basic Science law (1937) and cannot meet the present requirements of the Board for issuance of an original license.

Counsel for the doctor challenge the constitutionality of section 11, chapter 109, '35, C.S.A., from which the above quotation is taken, upon the ground that it violates the Fourteenth Amendment to the Constitution of the United States, in that it denies to him the guarantee of due process of law; and that it is an arbitrary, dis-

criminatory, and oppressive exercise of the police powers of the state.

In harmony with the rule that no inquiry will be made concerning the constitutionality of a statute if the controversy can be decided upon other grounds, we consider only the question as to whether the statute authorizing a cancellation of the doctor's license for three years' consecutive nonpayment of registration fee, and in requiring, as a condition precedent to reinstatement, that the doctor shall make such showing to the Board as would entitle him to the issuance of an original license, is a proper exercise of the police power of the state.

In *Chenoweth v. State Board,* 57 Colo. 74, 141 Pac. 132, we held, inter alia: "The legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an act, ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the courts have a right to examine the act and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects. When the police power is invoked for the purpose of regulating a useful business or occupation, and the mode in which that business may be carried on or advertised, the legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue his calling, and to exercise his own way, provided that he does not encroach upon the rights of others, cannot be taken away from him by legislative enactment."

We recognize the well-established principle that the practice of medicine, affecting as it does the public health and safety of the people, is subject to reasonable regulation by the state in the exercise of its police power for the promotion of the general welfare. *Gothard v.*

*People,* 32 Colo. 11, 74 Pac. 890; *Smith v. People,* 51 Colo. 270, 117 Pac. 612, 36 L.R.A.(N.S.) 158.

We held in *Chenoweth v. People* (*Supra*), that the only limit to the legislative power in prescribing conditions as to the right to practice a profession is that they shall be reasonable, and whether they are reasonable the courts must judge. The right is one of regulation only, and must be found in the power of the state to provide for the general welfare of its people. We stated further in the Chenoweth case: "The power of the legislature however, is not such as may unreasonably interfere with the undoubted right of every citizen to follow any lawful calling, business, or profession, he may choose, subject only to reasonable regulation; for the right to labor and to receive the fruits of such labor is a natural and inherent right always protected by the constitution."

The statutory ground for cancellation in this cause is the nonpayment for three consecutive years of a registration fee of $2.00 per year (for residents) or $10.00 per year (for nonresidents). Under the terms of the statute the doctor is permitted to apply for "reinstatement," but upon such application he must possess qualifications, educational and otherwise, of an entirely different character than those required when he was admitted, licensed and accepted as qualified to practice medicine in 1925. The sole shortcoming on the part of the doctor by reason of which he forfeited all his former standing as one fully qualified to practice medicine, and subjected him to tests not required when his license was granted, is that for three years he failed to pay the registration fee of ten dollars. Thus he is deposed as a practicing doctor, since the school of his medical training is not now on the "accredited" list, although it satisfied all requirements as of the date of his admission.

The failure of the doctor to pay a small annual registration fee has a very remote and disconnected relation to the promotion of morals, safety, general welfare, or the public health. When, as here, a complete forfeiture

is predicated on such nonpayment, and new conditions of eligibility for reinstatement, far above and beyond the payment of the delinquent fees, are attempted to be imposed, we believe the limitations upon a proper exercise of the police power have been exceeded, and that the "regulation," if such it can be called, is harsh, unwarranted and unreasonable.

As was stated by Mr. Justice Butler in his concurring opinion, in *Sapero v. State Board,* 90 Colo. 568, 11 P. (2d) 555:

"I concur in the decision, but wish to add to the reasons assigned for a reversal of the judgment one that seems to me to be too important to be overlooked.

"The right to revoke the license of a physician exists only by virtue of legislation enacted under the police power. To be valid, such legislation must bear a fair relation to the public health, safety, morals or welfare and tend to promote or protect the same. The legislature has no power, under the guise of police regulation, to arbitrarily invade the personal rights of an individual. It cannot provide for the revocation of a physician's license for a mere breach of ethics not involving moral turpitude or dishonorable conduct."

If this alleged "regulation" were held to be reasonable, many excellent physicians and surgeons might suffer the loss of their "valuable right" to practice their profession if, during an extended absence, or for whatever reason, they neglected for three years to pay a registration fee. They might find themselves unable, notwithstanding actual ability and experience, to meet the new qualifications for an original license.

If, in fact, good and sufficient cause exists to deprive the doctor of the right to practice his profession, and if that cause or disqualification bears a fair relation to the public health, safety, morals or welfare, there is ample authority under section 13 of the law to accomplish the result of a revocation of his license.

The judgment is reversed, with direction to order reinstatement of plaintiff upon the payment of delinquent registration fees.

Mr. Justice Jackson not participating.