## No. 16,371.

PEOPLE.EX REL. METZGER, ATTORNEY GENERAL *v.* WATROUS.
(215 P. [2d] 344)

Decided February 11, 1950.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. FRANK A. WACHOB, for relator.

Messrs. DINES, DINES & HOLME, Mr. ROBERT E. MORE, Mr. PETER H. HOLME, JR., for respondent.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS is an original proceeding in the nature of quo warranto upon information of the Attorney General to try the right of respondent to occupy the office and exercise the powers, duties and functions of State Highway Engineer of the State Highway department. In the petition for issuance of the writ it is alleged that the respondent "by reason of the facts and circumstances more fully set forth in the affidavit of your relator, attached hereto and made a part hereof, together with the exhibits thereunto attached, did on or about the 16th day of March, 1946, unlawfully usurp and hold, and unlawfully exercise the powers, duties and functions of the office of State Highway Engineer of the State Highway Department, and still unlawfully usurps and holds the

said office and exercises the powers, duties and functions thereof, without any warrant, title or right whatsoever * * *." In support of this charge relator filed his affidavit and certain exhibits. The respondent filed his answer and return to the rule to show cause, which issued on relator's petition, denying the existence of grounds for his removal. Respondent's answer was supported by affidavits and exhibits. The affidavits and exhibits of relator and respondent raise issues of law, since only the conclusions to be drawn from events and facts admitted are in dispute.

The cause is now before this court upon the motion of respondent for summary judgment.

### Questions to be Determined.

First: *Should the respondent be ousted from office for the reason that at the time of his original examination for appointment five points were added to his grade under the veterans' preference provisions of the constitution?*

It is undisputed that in determining the position of respondent upon the list of persons eligible for appointment, the respondent was elevated to first place by the addition to his grade of five points for military service under the provision of the so-called veterans' preference amendment, adopted November 7, 1944. This constitutional amendment provides inter alia that, "Five points shall be added to the grades of candidates receiving a passing grade who served in the armed forces of the United States in times of war and who were honorably discharged therefrom * * *." S.L. '45, p. 265.

Relator contends that respondent waived the benefit of this veterans' preference at the time he filed his application to take the civil service examination. It is clear that the printed form of application for examination was not changed to conform to the constitutional amendment above mentioned, and contained questions

wholly irrelevant to the rights of applicants to a veterans' preference under said amendment. The form of application for examination, as filled in and signed by Watrus, bearing upon the question under discussion, was as follows:

"17. Do you claim military preference? If so, were you engaged in the military service of the United States for at least six months at time of war?............No............
(Yes or no)

Army?........3 months........... Navy?............................ In what
(Yes or no) (Yes or no)

capacity? .................................................................................

Was your service in the United States or in a foreign country?........United States........

Give dates of your enlistment and discharge.....................
........October 28, 1918....................................January 24, 1919."

■ It is apparent that in section 17 of the form no space is provided for answer to the first question. By writing the word "no" in the space following the inquiry as to whether military service extended over a period of at least six months, and by inserting the number of months of service in the space provided, respondent did nothing whatever to create a waiver, the essentials of which are, "the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit." *United Commercial Travelers of America v. Boaz,* 27 Colo. App. 423, 150 Pac. 822. The questions, in the form presented, were confusing and no waiver can be based on the answer given by respondent. "Waiver is the intentional abandonment of a known right, not a trick to catch one napping." *Millage v. Spahn,* 115 Colo. 444, 175 P. (2d) 982.

■ Moreover it appears without contradiction that respondent claimed the benefit of veterans' preference. He listed his period of military service, and submitted his honorable discharge in proof and in support thereof.

Our decision in the recent case of *Perry et al. v. O'Farrell*, 120 Colo. 561, 212 P. (2d) 848, is conclusive against the position of relator. In that case we stated: "The commission was cognizant of the terms and mandates of the constitutional amendment. Theirs was the duty to comply with its mandates and the public, as well as veterans affected, had a right to assume that they would perform their duty. The commission had before it O'Farrell's honorable discharge, his application for reinstatement, and should have been aware of the fact that he was entitled to a five-point credit upon the effective date of the amendment and should have, of its own motion, added the additional points."

It follows that the respondent was entitled to the five-point award for military service. The question under discussion is answered in the negative.

Second: *Should the respondent be ousted from office upon the alleged ground that he was not a licensed engineer when he took the civil service examination?*

There is no dispute concerning the facts upon which relator bases his argument that the respondent lacked the status of a licensed engineer at the time of the examination. The facts are: That the respondent was graduated from the Colorado School of Mines in 1914, and was licensed to practice engineering within the State of Colorado January 26, 1920, pursuant to the requirements of the statute adopted in 1919. He complied with all statutory requirements concerning the payment of an annual license fee for continuance of his status of licensed engineer through the year 1933. From December 31, 1933, until June 15, 1945, he paid no renewal license fee. The examination of all applicants for the position, subsequently awarded to respondent, was completed April 13, 1945. On June 18th, 1945, pursuant to provisions of the statute governing reinstatement of licensees to practice engineering, the respondent paid the statutory fee required for reinstatement. About ten months thereafter, and on March 16, 1946, he was appointed

to the office of State Highway Engineer and has at all times since occupied that position. Prior to this appointment, the Civil Service Commission considered the question as to whether respondent was a "licensed engineer" within the meaning of the statute setting up the qualifications for the position, and resolved the question in his favor. As hereinafter discussed under separate heading we are conclusively bound by the commission's finding on this point.

Section 104, chapter 143, '35 C.S.A., as amended by section 1, chapter 211, Session Laws of Colorado, 1945, page 571, provides, inter alia, the following: "The person appointed must be at least thirty-five years old and have at least five years' practical experience in the construction and maintenance of public highways, and shall be a graduate and licensed engineer of at least ten years' general experience in executive engineering." The term "licensed engineer" as used in this statute has reference to original qualifications. It is self-evident that the legislature was dealing with qualifications rather than revenue in adopting this section. Payment of annual renewal fees has nothing to do with qualifications and when, as here, the only condition for reinstatement is the payment of a reinstatement fee, and where reinstatement was had ten months prior to appointment, it cannot successfully be contended that respondent was not a licensed engineer on the date of appointment. There is nothing in the law requiring that an applicant must be a "licensed engineer" on the date of examination, or for any period prior thereto. The law states: "The person *appointed* * * * shall be a graduate and licensed engineer." Even though no consideration be given the fact that respondent became a licensed engineer in 1920, and paid all renewal fees through 1933, and assuming that the only qualification as a licensed engineer was that brought about by the reinstatement of June 18, 1945, the required status was present ten months prior to appointment.

In *Neelley v. Farr*, 61 Colo. 485, 158 Pac. 458, and *Lipset v. Davis*, 119 Colo. 335, 203 P. (2d) 730, we reached conclusions in somewhat analogous situations consistent with these views. The question under discussion is accordingly answered in the negative.

■ Third: *Should the respondent be ousted from office upon the alleged ground that he did not have five years' practical experience in the construction and maintenance of public highways?*

Relator argues that since the undisputed facts are that respondent claimed five years' experience in construction and maintenance of public highways during his employment with the U. S. Forest Service, which work was done during the period in which respondent paid no renewal license fees, that such experience could not supply the minimum requirements, because it was acquired at a time in which "Watrous was not a licensed engineer." It is further argued that the roads in connection with which Watrous gained this five years' experience were not "public highways" within the meaning of the statute.

In disposing of the first of the above contentions we deem it sufficient to refer to the language of the statute. The statute does not require that five-years' experience in public highway construction and maintenance shall have been had while the person so acquiring such experience enjoyed the status of a licensed engineer. Under the statute the state highway engineer must have several separate qualifications: (a) He must be at least thirty-five years old; *and* (b) he must be a graduate engineer; *and* (c) he must have "five years' practical experience in the construction and maintenance of public highways"; *and* (d) he must be a licensed engineer of at least ten years' general experience. It is very clear that the statute does not require that the five years' experience be obtained while the person obtaining it was in fact paying an annual license fee in Colorado. It cannot be said that the payment of a nominal license

fee would add anything to the practical value of that experience. The experience might have been acquired outside the State of Colorado. Actually it was acquired in the service of the federal government, and, under the express provisions of section 12, chapter 62, '35 C.S.A., an engineer so employed is exempted from payment of the annual fee. ·This statute provides: "The following shall be exempted from the provisions of this chapter. * * * 6. Practice of engineering or land surveying solely as an officer or as an employee of the United States upon government works or projects."

The contention of relator that respondent's claimed experience was not had in connection with the construction and maintenance of "public highways" is equally untenable. Relator argues that roads constructed by respondent as an employee of the federal government are not "public highways" because they are not included within the definition of that term as set forth in section 97, chapter 143, '35 C.S.A., which reads as. follows: "Public highways are divided for the purpose of this article, into two classes: 'state highways' and 'county highways.' State highways are those designated and accepted as such by the commission, and are to be constructed and maintained by the state in accordance with the provisions of this article. County highways are those constructed and to be maintained by the counties."

Careful study of Article 12 of chapter 143, of which section 97, supra, is a part, will result in a clear conclusion that said section 97 does not purport to be a definition of the term "public highways." It distinguishes between state and county highways and provides a guide for maintenance obligations. But the statute does provide a definition of "public highways" which clearly includes those roads providing the experience claimed by respondent. Section 93, chapter 143, '35 C.S.A., as amended by section 1, chapter 11, Extraordinary Session Laws of Colorado, 1945, page

41, provides: "All roads and highways which are, at the time of the passage of this article, by law open to public traffic shall be public highways, within the meaning of this article." The annotator has appended to this section, as set forth in section 93, chapter 143, '35 C.S.A., the following note: "As to definition of public highway, see §1 of this chapter." No good purpose would be served by quoting the all-inclusive definition of "public highways" set forth in section 1, chapter 143, '35 C.S.A. Suffice it to say that it clearly answers the contention of relator in the matter under discussion.

From the foregoing, and the further reasons hereinafter discussed under separate heading, the question must be, and is, answered in the negative.

Fourth: *Should the respondent be ousted from office for the asserted reason that he was guilty of making false representation in his application for examination before the Civil Service Commission?*

Relator charges that respondent did not truthfully answer questions asked in section 18 of his application for examination. The said section, and answer of respondent is as follows:

"18. Have you ever been arrested, summoned into court as a defendant, or indicted, or convicted, or fined or imprisoned, or placed on probation, or has any case against you been filed, or have you ever been ordered to deposit collateral for alleged breach or violation of any law or police regulations or ordinance whatsoever?
 No
 (Yes or no)
"If so, list all of the cases without any exception whatsoever on the last page of this form; or on a separate sheet, giving in each case (1) the date, (2) your age at the time, (3) the place where the alleged offense or violation occurred, (4) the name and location of the court, (5) the nature of the offense or violation, (6) the penalty, if any, imposed, or other disposition."

The basis of relator's charge is that the respondent's

answer was false, in that on June 3, 1940, a judgment for $538.66 was entered against him in a civil suit in the district court of El Paso county. That action grew out of an automobile accident and it is undisputed that the liability of the respondent rested solely upon his ownership of an automobile being driven at the time of the accident by a member of his family. Respondent was not present at the time of the accident. For a brief period after the entry of this judgment respondent's driver's license was suspended under the provisions of section 42, chapter 16, '35 C.S.A.

It is further undisputed that in April, 1941, the Driscoll Construction Company, a corporation, and respondent were accused in the municipal court of Pueblo, Colorado, of having violated a zoning ordinance of said city by operating a gravel pit within a residence B district. It is clear that the principal defendant was the corporation and that respondent was an employee. A fine of $50.00 was assessed against each defendant, an appeal was taken to the county court, and an agreement was thereafter reached after the company sought determination of its right to remove the gravel by an action in the district court. The agreement was reached upon the completion of the government airport construction, upon which the Driscoll Company was engaged, the company having removed its equipment and ceased operation on the ground located in the alleged residence B zone. The city attorney and the attorney for the company agreed to dismiss the pending cases. Thus no final decision of court was ever had on the alleged zoning ordinance violation.

It is urged that the nondisclosure by respondent of the foregoing events amounts to so grave a false representation, and to trickery of such a nature as to warrant his ouster from office. With that contention we cannot agree. There is absolutely nothing in the events above set forth which could have had even the remotest bearing upon respondent's fitness for the office

to which he was appointed. It is fundamental that a false representation, to be actionable in civil or criminal cases, must be of a material fact and it "must be one necessarily influencing and inducing the transaction, and affecting and going to its very essence and substance." *Wheeler v. Dunn,* 13 Colo. 428, 22 Pac. 827; *Hart v. Zaitz,* 72 Colo. 315, 211 Pac. 391. It would be absurd for us to assume that had the incidents been recalled and related by respondent in his application, any different determination of his application could possibly have been made by reason thereof. The emphasis of the language of section 18 of the form would clearly seem to be directed toward criminal cases, and it is clear that respondent so interpreted it.

Under the circumstances here present we hold as a matter of law that there was no fraud or deceit on the part of respondent in answering the questions propounded in section 18 of the application for examination.

 Fifth: *Under the decision of this court in People ex rel. Beardsley v. Harl, are the findings of the Civil Service Commission conclusive upon the question of the qualifications of respondent?*

Relator contends that the case of *People ex rel. Beardsley v. Harl,* 109 Colo. 223, 124 P. (2d) 233, is distinguishable upon three points: 1st. It is argued that in the case at bar "the State of Colorado is the interested challenger" and that public interests are here involved; whereas private interests were involved in the Harl case, by reason of which a different result should obtain; 2nd. It is argued that in the Harl case the statute requiring a five-year experience in banking had been repealed by the adoption of the Civil Service Amendment, and that such experience was therefore not a prerequisite to the appointment of Harl, whereas in the case at bar it is admitted that five years' experience in the construction and maintenance of public highways is a minimum requirement; 3rd. It is argued

that in the Harl case the Civil Service Commission considered Harl's record, but that in the case at bar the Commission did not consider respondent's record, but illegally delegated its authority to Dr. Dolve, a consultant of the commission. This factual assumption has no support in the record and we accordingly eliminate the third point of distinction, urged by relator, without further comment.

The Harl case is authority for the proposition that quo warranto is not the proper remedy for one seeking, by way of an original adjudication, a court determination upon a question of fact constitutionally placed within the Civil Service Commission for determination. From the opinion of Mr. Justice Knous in the Harl case, supra, we quote: "If it is assumed that the Civil Service Amendment did not repeal the experience requirements of the statute, which expressly we do not determine, it, nevertheless, is certain that such amendment *did* confer upon the Civil Service Commission, and upon it alone, the discretion to ascertain the qualifications, fitness and merit of all applicants under the classified service, whether the standards thereof were prescribed by Constitution, statute or rule. Thus, it would follow that the resolution of the question as to whether Harl had "five years' experience as a banker" involved a factual and discretionary determination by the commission. * * * The proceeding at bar was not instituted to compel action by the commission nor to inquire directly into any alleged failure by it to regularly pursue its authority in making the certification of which complaint is made, but, on the contrary, sought to have the district court by way of an original adjudication, as a matter of first impression, determine a question of fact constitutionally within the discretion of the commission and upon such finding enter a judgment striking Harl's name from the commission's eligible list, oust him from office, and certify relator to such office in the classified service, sans opportunity for the Civil Service Com-

mission to be heard and without mandate or direction to it or certification by it or requisition and appointment by any executive officer of the state. Obviously, the procedure here attempted by the relator could not so properly accomplish, and the trial court committed no error in sustaining the demurrer."

It is apparent from the foregoing quotation that the Harl case cannot be distinguished upon the ground that the five-years' experience statute there involved had been repealed. That question was expressly eliminated as a factor in the decision, and the opinion is grounded upon the proposition that discretionary power was constitutionally conferred upon the Commission, *and upon it alone,* to ascertain the qualifications of applicants for civil service positions.

We find nothing in the opinion in the Harl case, nor in any other reputable authority, which would indicate that the rule there applied should be limited to controversies involving private interests, or withheld from application in a controversy in which "the State of Colorado is the interested challenger." The application of the law as announced in the Harl case might well have been sufficient to dispose of this controversy. However, due to the public interest and wide publicity given to certain phases of the matters of substance here involved, and in harmony with the request of the parties, we have elected to determine those issues of substance. In so doing, we have construed the whole record herein in the light most favorable to relator and we hold that there are no sufficient grounds for removal of respondent from office.

Having determined the issues of substance in favor of the respondent, it becomes unnecessary to consider the questions of laches and res judicata upon which he further relies.

The motion of the respondent for summary judgment in his favor is granted, and judgment entered in accordance with the views herein expressed.

Mr. Chief Justice Hilliard and Mr. Justice Holland dissent.

Mr. Justice Holland dissenting.

In joining with the majority of the court to take original jurisdiction in this matter, I was in error, as my further study of the case convinces.

This action was instituted by the Attorney General upon his own relation and official capacity, and in the name and on behalf of the People of the state of Colorado. As disclosed by the record, the Attorney General, in my opinion, was without authority to thus proceed. There is no showing that he was required by the Governor to institute this action, as is clearly necessary under our statute defining the duties of the attorney general. These duties are prescribed by section 1, chapter 13, '35 C.S.A., which is as follows: "The attorney general shall attend in person at the seat of government during the session of the general assembly and the supreme court, and shall appear for the state, prosecute and defend all actions and proceedings, civil and criminal, in which the state shall be a party or interested, when required to do so by the governor or general assembly, and shall prosecute and defend for the state all causes in the supreme court in which the state is a party or interested."

In the Attorney General's affidavit in support of his petition initiating these original proceedings in quo warranto, he states, " * * * he was requested by the Governor of the State of Colorado to make a complete investigation concerning the status and conduct of Mark U. Watrous as Chief Engineer of the Colorado State Highway Department * * *." This is not an order of, or a direction from, the governor to institute this ouster proceeding. The action is beyond the scope of section 13 of article 12 of our state Constitution; neither does it come within the provisions of section 5, chapter 36, volume 2, '35 C.S.A.

As it relates to persons in the classified civil service, the constitutional provision is, "They shall be removed or disciplined only upon written charges which may be filed by the head of a department or by any citizen of the state * * * to be finally and promptly determined by the commission upon inquiry and after an opportunity to be heard * * *." The statute above referred to is a part of the laws made to enforce the provisions of the Constitution and is as follows: "The making and enforcement of rules to carry out the purpose of the constitutional provision and of this article; the alteration and rescission of such rules, the conduct of all competitive tests, the determination of all removal or disciplinary cases, the standardization of all positions, the determination of standards of efficient service and the determination of the grades of all positions in the classified service shall be vested in the commission. No person in the classified service shall be paid until a certificate is furnished by the commission that the appointment has been made pursuant to law."

The Attorney General is the head of a department, but the constitutional provision does not relate to him other than on occasion when he might see fit to file charges against any of the subordinates in his department. This action is not by John W. Metzger as a citizen, but is in his capacity as attorney general, which is limited in such matters, as I have hereinbefore set out.

A second, and, in my opinion, more important reason why we should not have accepted jurisdiction, is the fact that we are herein called upon to usurp the functions clearly vested in the Civil Service Commission, and no other. The commission has never had the opportunity to pass upon the matters and facts now shown to this court. By erroneously retaining jurisdiction, we open the door for a common practice to be set up by which boards and commissions primarily charged with these duties, are by-passed.

This court, having taken jurisdiction and permitted

the filing of the petition, and the proceedings that followed, does not prevent the court, upon full consideration, from now correcting what, in my opinion, was the error made in accepting jurisdiction.

The court, having taken jurisdiction, has erroneously proceeded to a determination of the issues upon a motion for summary judgment and to its opinion thus disposing of the case on its merits, I dissent. The fact that counsel for both sides of the controversy agree and request that we dispose of the matter does not give us the authority or right to determine matters *admittedly* never presented to, or known by, the commission, and thus annul the plain language of the statute above quoted which says that the determination of all removal cases *shall* be vested in the commission. We cannot assume what the commission might have done had all the facts, as we now have them from the record, been before it. There is an adroitness apparent in the actions of Mr. Watrous in preparing his application which has been herein attacked. That there is something missing or avoided in the application cannot now be successfully denied, and it is virtually admitted in the majority opinion in the following words, "It would be absurd for us to assume that had the incidents been recalled and related by respondent in his application, any different determination of his application could possibly have been made by reason thereof." Question No. 18 on the application is as follows: "Have you ever been arrested, summoned into court as a defendant, or indicted, or convicted, or fined, or imprisoned or placed on probation, or has any case against you been filed, or have you ever been ordered to deposit collateral for alleged breach or violation of any law or police regulations or ordinances whatsoever?" The Watrous answer was, "No."

In the majority opinion the court further states, "The emphasis of the language of section 18 of the form would clearly seem to be directed toward criminal cases,

and it is clear that respondent so interpreted it." Any layman with ordinary knowledge of the English language, much less a graduate civil engineer, would surely understand that, being summoned into court, or that "any case" had been filed against him, would also understand that violation of police regulations and ordinances, would call for a frank expression, and the truth, and that these matters cannot be brushed aside by the convenient interpretation as meaning criminal cases. Interrogatory No. 18, in its very words, was placed in the application for a specific reason, and the correct answer thereto was necessary for the full consideration of the fitness of the applicant by the commission.

Real issues of fact have been presented by allegations and denials and under such conditions, a summary judgment is not warranted under rule 56, R.C.P. Colo. It is a drastic remedy and should not be employed unless it is absolutely clear that no genuine issue remains for trial. If the questions here raised were tested by trial, under oath of material witnesses, the truth could be ascertained and the right party prevail. If Mr. Watrous is right, as a hearing might disclose, then he is entitled to be vindicated. However, on the other hand, if he is wrong, justice requires that the state or public be not imposed upon. I again say that issues of fact are here presented that preclude summary judgment.

In my opinion, if I am in error as to my reasons given why we should not have entertained this petition, then the matter should be referred to a master to take testimony on the questions of fact presented and upon our consideration of such master's report, we should either affirm the findings or refer the matter to the commission. Since this has now become a matter of public concern, the public, whose servants we are, should have full opportunity to know from the public records of a trial what this is all about.